AMERICAN EXCHANGE BANK *vs.* ALFRED BLANCHARD.

A written contract in this form: " Twelve months after date, we promise to pay to ourselves or order three hundred and twenty-one dollars for value received, payable in Boston, and subject to the policy. J. S. & Co." (Indorsed) " Pay to the order of the Anchor Insurance Co. J. S. & Co.," is not a negotiable promissory note.

CONTRACT. The second count was upon the following written instrument ·

" New York, Sept. 12th, 1862.

" $321 25/100

Twelve months after date, we promise to pay to ourselves or order three hundred and twenty-one 25/100 dollars for value received, payable in Boston, and subject to the policy.

" Blanchard, Sherman & Co."

(Indorsed,)
" Pay to the order of the Anchor Insurance Co.

" Blanchard, Sherman & Co."

" Pay to the American Exchange Bank or order, on account of Anchor Ins. Co.        Wm. H. Bird, President."

The count alleged that the defendant made this note, in the name of Blanchard, Sherman & Co., and indorsed it to the Anchor Insurance Company, which indorsed it to the plaintiffs. The defendant filed a demurrer to this count, which was sustained by *Russell*, J., and the plaintiffs alleged exceptions.

*A. A. Ranney*, for the plaintiffs.

*C. W. Loring*, for the defendant.

BIGELOW, C. J. The contract set out in the second count in the declaration is not a promissory note on which an action can be maintained in the name of any person other than the promisee. It is not payable absolutely. The words " subject to the policy," appended to the promise, are susceptible of an easy and intelligible interpretation. The contract was a promise to pay a certain sum of money to the Anchor Insurance Company, and would have well supported an action brought in their name to recover the amount. Construed with reference to this fact, and that it must have been delivered to the company on its inception, it was clearly intended to be made subject to a policy of insurance then existing between the parties. This is the result not of mere conjecture, but is a reasonable inference from the facts which are apparent on the face of the contract. Thus interpreted, it is too plain for discussion that the promise is in its nature contingent, and dependent for its fulfilment on other stipulations than those which are inserted in the body of the contract. To determine whether at its maturity any money would become due upon it, it would be necessary to have recourse to the policy therein referred to, and to ascertain whether any loss

had occurred which would constitute a valid claim against the company in favor of the promisors, and operate as payment or set-off in whole or in part for the amount which the defendants had agreed by their promise to pay to the company. The legal effect of the stipulation was to incorporate the policy into the contract for the payment of the money, and to make the latter dependent on the contingency that no claim would arise on the policy against the company before the expiration of the time when the promise would mature. Such a contract clearly comes within the principle on which it is held that promises which are not absolute as to amount or event cannot be deemed negotiable. The necessity of certainty and precision in mercantile affairs, and the inconveniences which would result if paper securities were incumbered with conditions and contingencies, have led to the establishment of an inflexible rule that a promise, to be negotiable, must be absolute. Chit. Bills, (10th Amer. ed.) 132. *Hubbard* v. *Mosely,* 11 Gray, 170.

*Exceptions overruled*